## 69175. GITHENS v. ROBERTS.
(329 SE2d 219)

Beasley, Judge.

Plaintiff-appellant Githens was formerly married to defendant-appellee Roberts and they were divorced in March 1981. Their settlement agreement was made a part of the divorce decree and provided for the disposition of their marital residence, then appraised at $120,000. The wife, Githens, was to convey her interest in the property by quitclaim deed to the husband, which was done at the time of the divorce. The husband had the option within two years of either paying to the wife "$35,088.97, which represents the wife's remaining equity in said home," or "the Husband shall sell the house and pay the Wife one-half . . . of the net equity less $10,000. The net equity shall be obtained by reducing the sales price by the following items: (1) The current balance owing Southern Bank of $23,822.06; (2) All closing costs and expenses paid by the seller to accomplish the sale of the house . . .; (3) $6,000 which is the approximate balance of some family bills the Husband is paying; (4) Any interest paid on a promissory note in favor of Southern Bank dated March 5, 1981. However, the total of that interest shall not exceed $3,200."

Initially the husband intended to keep the house and pay the wife her agreed equity of $35,088.97. However, in March 1982, he decided to sell the house and listed it with a realtor with an asking price of $136,500. The evidence indicates that the house was shown numerous times up through August 1982 and that the asking price was reduced to $125,000. During this period the husband received one oral offer of $100,000 which he refused and no written offers. In September, 1982, one Olsen, who had a home in the same general area, offered to purchase the house for $104,000 by trading his unencumbered house valued at $54,000, assuming the husband's outstanding mortgage of approximately $22,000 and paying $28,000 cash. The husband accepted this offer. Before closing, the wife commenced this action by filing a complaint in equity to enjoin the sale. The trial court denied the injunction and the property sale was closed in February 1983. The wife received $22,326.97 of the proceeds of the sale which was arrived at by applying the formula agreed to in the separation agreement. Thereafter the wife amended her complaint to allege a

breach of the separation agreement claiming that an implicit condition of the agreement [was] that the property was to be sold at the fair market value and not at an artificially low price by undervaluing it along with property for which it was transferred. Trial was had before a jury in which the wife contended that the fair market value was that of the $120,000 appraisal at the time of the divorce, and the husband contending that after trying to sell the house for over six months for $120,000 or more he accepted the only offer he received. Verdict and judgment was for the husband and a motion for new trial was denied. The wife then concurrently filed notice of appeal to this court and application for discretionary appeal to the Supreme Court. The Supreme Court denied the application for appeal stating that appellate jurisdiction was in this court. *Held*:

1. The wife asserts that the husband's conduct in the sale of the house constituted a breach of the separation agreement; in other words, that the evidence is insufficient to support the verdict.

The wife argues that the agreement does not provide that the husband could accept other property in trade for the house, and by doing so at a below fair market value sales price the agreement was breached because an implicit condition of the agreement was that the sale price would be at the fair market value of the $120,000 appraisal used to establish the wife's equity if the husband did not sell the house.

On the facts here, the trade was merely part of the consideration of the sale of the property and thus within the meaning of a sale as stated within the agreement. See 30 AmJur2d 365, Exchange of Property, § 3.

Although the wife claimed and testified that the $120,000 appraised value of the property at the time of the divorce was an implicit condition that the property would be sold for at least that price, the husband's testimony was to the contrary. The clear and unambiguous language of the separation agreement does not require the husband to sell for at least $120,000 or at a price to produce the same net equity to her as she would receive if the husband kept the house.

The evidence reflects that the husband made a six-month effort to sell the property at or above the original appraised value but was unable to do so. There is evidence that residential sales were depressed because of the prohibitively high interest rates existing at the time the house was up for sale in 1982. Later appraisals of the property ranged from $116,500 to $95,000, and the sales price was within the range of this evidence. The stated transaction value of the property of Olsen that was traded conformed closely to the evidence of an appraisal thereof. Under these circumstances we find that there was evidence to support the verdict for the husband and we will not upset it.

"The appellate court will not disturb the trial court's refusal to grant a new trial if there is any evidence at all to support the verdict." *Blazer Financial Serv. v. Stewart*, 141 Ga. App. 156 (1), 157 (233 SE2d 1) (1977).

2. The trial court did not err in refusing to charge on the wife's requests concerning the duty of an agent to a principal, and co-tenancy. These requests rested on the wife's contention that the parties were tenants in common at the time the property was sold and that the husband was therefore her agent. However, the evidence does not support this contention. The separation agreement states that the wife's interest in the property shall be conveyed to the husband by the wife by quitclaim and such a deed was executed by the wife at the time of the divorce in March 1981. Thus, in 1983, when the property was conveyed, the wife had no right of possession or co-tenancy, only an equitable interest in the proceeds of the sale for which she apparently executed another quitclaim deed. Execution of this latter deed is not evidence that she was a co-tenant.

3. The husband called as a witness an employee of the county tax assessor's office who was permitted to testify that the fair market value of the property was $95,000. The wife contends that the admission of this testimony was error because the witness' opinion lacked a factual basis and the witness was not qualified to testify as to value.

" '[W]hen an opinion is sought from a witness as to . . . value . . ., it is necessary that it be shown that the witness has some knowledge, experience or familiarity with the value of the thing or of similar things. This foundation is essential in order to show the bases of the reasons for the witness' opinion . . .' " *Dept. of Transp. v. Kirk*, 138 Ga. App. 180 (1), 181 (225 SE2d 781) (1976).

As the witness testified that she had been appraising property for some years, had evaluated other properties in the same area including the property in question at an earlier time, and had recently examined the property, we find that her testimony meets the test set forth in the foregoing case. There is no merit in this enumeration.

*Judgment affirmed. Birdsong, P. J., and Carley, J., concur.*

DECIDED MARCH 6, 1985 —
REHEARING DENIED MARCH 26, 1985 —

*Walter W. Ballew III*, for appellant.
*Carl S. Pedigo, Jr.*, for appellee.